FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 18, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES R., <br>                Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>                Defendant. | No. 2:17-cv-00297-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 22 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 22. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 15, and denies Defendant's motion, ECF No. 22.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER - 1

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

ORDER - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that he has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On September 19, 2012, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of September 19, 2012. Tr. 250, 253-58. The application was denied initially, Tr. 152-65, and on reconsideration, Tr. 166-72. Plaintiff appeared before an administrative law judge (ALJ) on July 8, 2015. Tr. 67-107. On July 24, 2015, the ALJ denied Plaintiff's claim. Tr. 28-55.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 19, 2012. Tr. 33. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease; chronic obstructive pulmonary disease (COPD); asthma; bilateral carpal tunnel syndrome; posttraumatic changes of the left shoulder and osteoarthritis of the right shoulder; obesity; post-traumatic stress disorder (PTSD); affective disorder; mixed language disorder; borderline intellectual functioning; and pain disorder. Tr. 33.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment. Tr. 34. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can only occasionally perform postural activities; however, he can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally reach overhead bilaterally. He can frequently handle and finger bilaterally. He must avoid concentrated exposure to cold and vibrations. [Plaintiff] can have no more than moderate exposure to respiratory irritants or hazards. In addition, [Plaintiff] can understand, remember, and carry out simple, routine tasks and instructions. He is able to maintain attention and concentration on simple, routine tasks for 2-hour intervals between regularly scheduled breaks. He cannot work in a fast-paced production environment, such as assembly line production. [Plaintiff] can have only superficial interaction with the public and no more than small groups.

Tr. 36.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 47. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, janitors/cleaners, graders/sorters, and handpackers/packagers. Tr. 48. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 19, 2012, though the date of the decision. Tr. 49.

On December 6, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 9-12, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's impairments at step three;

2. Whether the ALJ properly evaluated the medical opinions; and

3. Whether the ALJ properly incorporated the opined limitations into the RFC.

ECF No. 15 at 3-19.

## DISCUSSION

### A. Step Three

Plaintiff contends that the ALJ erred by finding that Plaintiff's respiratory impairments did not meet a listed pulmonary impairment. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,

education or work experience." 20 C.F.R. § 416.925. To meet a listed

impairment, a claimant must establish that he meets each characteristic of a listed

impairment relevant to his claim. 20 C.F.R. § 416.925(d). If a claimant meets the

listed criteria for disability, he will be found to be disabled. 20 C.F.R. §

416.920(a)(4)(iii). The claimant bears the burden of establishing he meets a

listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). However, the ALJ

must receive into evidence during the administrative hearing the opinion of the

testifying medical examiner on the issue of Listing equivalence and give

appropriate weight to that opinion. SSR 96-6p (eff. July 2, 1996, to March 27,

2017).

Here, the ALJ found that Plaintiff's impairments and combination of

impairments did not meet or equal any listings, including Listings 1.02 (major

dysfunction of joint(s)), 1.04 (disorders of the spine), 3.02 (chronic respiratory

disorders), 3.03 (asthma), and 11.14 (peripheral neuropathy). Tr. 34-35. Plaintiff

faults the ALJ for failing to find that Plaintiff's asthma and COPD did not meet a

pulmonary listing under Category 3.00 for respiratory disorders, specifically

Listing 3.02A (chronic respiratory disorders) and Listing 3.03 (asthma).[1]  ECF No.

---

[1] Plaintiff failed to support this argument with either the legal standards for each of

these Listings or with citations to the supporting medical evidence of record.

15 at 11. For Listing 3.02A, a person's height and pulmonary function test results are used to establish whether a claimant meets the chronic pulmonary insufficiency standard. A claimant who is 70 inches tall, as Plaintiff was, meets the standard if he has an $FEV_1$ score equal or less than 1.55. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.02A (eff. July 20, 2015, to Aug. 11, 2015). To meet Listing 3.03B, the claimant must have an asthma attack occurring at least once every two months or at least six times a year, despite prescribed treatment and physician intervention. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.03. Each in-patient hospitalization lasting longer than twenty-four hours to control asthma counts as two attacks, and an evaluation period of at least twelve consecutive months is used to determine the frequency of attacks. *Id.*

---

Plaintiff is warned that failure to support an argument with facts and laws may result in the Court not considering the argument. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining the court may decline to address the merits of issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing that issues not "specifically and distinctly argued" in the party's opening brief on appeal may be disregarded by the court).

Here, the medical expert at the hearing was Anthony Francis, M.D.  Tr. 31.

As to Plaintiff's pulmonary function, Dr. Francis testified:

> So this was kind of a hard record to figure out because the Claimant is
> over 50, and it looks like every time they ever tested him for either
> asthma or COPD he had really poor pulmonary function tests.  I mean,
> we've got three or four of in here that are really poor, and none of
> them that were ever any good, but he never really got any better with
> a bronchodilator.  So I'm kind of wondering if he should be a [Listing]
> 3.02 or 3.03.

Tr. 95.  Dr. Francis then testified that he was confused as to whether Plaintiff met a

Listing because there were:

> a whole bunch of essentially light RFCs by everyone who has looked
> at this case.  And so I'm kind of torn.  I mean he, had really low
> pulmonary function tests every time he was testified over say three or
> four years here, probably enough to at least equal the asthma and the
> COPD listings.  But then on the other hand, if you just go by the RFCs
> that are assigned by everybody maybe could function at a light RFC
> with no exposure to dusts, odors, fumes, noxious lung irritants.  So I
> don't know what to do with this case.  I mean, I guess if he has 12
> continuous months or he's [sic], you know, had a pulmonary function
> test of 20, 30 or 40 percent of what's predicted, he's probably at a
> listing level.  So I don't know what to do with it, from the standpoint
> of a lung disease claim.

Tr. 95-96.  Dr. Francis later testified that based on the medical records it was

unclear whether Plaintiff had primarily asthma or COPD, or both, but Dr. Francis

suspected that Plaintiff suffered from both COPD and asthma.  Tr. 99.  Dr. Francis

also discussed Plaintiff's recent smoking cessation, stating:

> If you're a smoker that will tend to exacerbate both of those or make
> them worse.  Then if you quit, you know, hopefully you'll get little bit
> better or maybe not have as many asthma attacks.  So it's kind of

ORDER - 11

> speculative to say whether those conditions would improve say after six months in stopping smoking. I mean, you would always hope that they would.

Tr. 99.

Even though Dr. Francis testified that Plaintiff likely met either one or both 3.02A or 3.03 Listings, the ALJ generally found that 1) the necessary medical test results were lacking as to Plaintiff's COPD in order to satisfy Listing 3.02A requirements and 2) the record failed to establish the requisite number of asthma attacks required by Listing 3.03B. Tr. 34 & 35.

Plaintiff has not demonstrated that he had a qualifying test score under Listing 3.02A. The record contains $FEV_1$ scores of 1.5, Tr. 494 (2007), and 1.53, Tr. 636 (July 30, 2012), both of which predate the alleged onset date of September 2012. *See also* Tr. 724 (Jan. 1, 2011: $FEV_1$ score of 2.2). Plaintiff's $FEV_1$ scores after the alleged onset date do not qualify under the Listing. Tr. 612-17 (Feb. 6, 2013: $FEV_1$ score of 1.64); Tr. 626 (March 27, 2013: $FEV_1$ score of 1.65). Accordingly, Plaintiff has not demonstrated that the ALJ erred in finding that Plaintiff's condition does not meet Listing 3.02A requirements.

As to Listing 3.03B, it appears as though the ALJ may have erred when she concluded that Plaintiff had not suffered the requisite number of asthma attacks. The record shows that Plaintiff sought medical treatment for pulmonary conditions on several occasions during the twelve-month period from June 2014 to May 2015,

ORDER - 12

including three hospitalizations.  Tr. 680-99 (June 16-18, 2014: hospitalized for

two asthma attacks/exacerbations); Tr. 785-86 (June 30, 2014: follow-up

treatment); Tr. 668-78 (Aug. 10-11, 2014: hospitalized for asthma and COPD

exacerbation ); Tr. 786-87 (Aug. 14, 2014: follow-up treatment); Tr. 787-88 (Sept.

15, 2014: follow-up treatment); Tr. 788 (Oct. 27, 2014: follow-up treatment); Tr.

640-66 (Jan. 4-8, 2015: hospitalized for COPD exacerbation and dyspnea); Tr.

789-90 (Jan. 12, 2015: follow-up treatment); Tr. 794, 861 (May 27, 2015:

treatment for flareup of COPD).  *See also* Tr. 489 (May 31, 2012); Tr. 782 (Apr. 2,

2013); Tr. 783 (May 24, 2013); Tr. 784-85 (Feb. 28, 2014); Tr. 854-56, 863 (Aug.

21, 2015).  While Plaintiff was diagnosed with COPD exacerbation and dyspnea

(and asthma was not specifically listed as a diagnosis) during the third

hospitalization in January 2015, it is unclear on this record, given Dr. Francis'

testimony, Tr. 95-99, whether Plaintiff's pulmonary conditions were caused by

either asthma or COPD, or both.  Therefore, in order to permit this Court to

meaningfully review the decision, the ALJ should have further explained why

Plaintiff did not meeting Listing 3.03B.  Without further explanation, the Court is

unable to determine whether the ALJ's finding is supported by substantial

evidence.  *See Gonzales v. Sullivan,* 914 F.2d 1197, 1200-01 (9th Cir. 1990).

It appears the ALJ discounted the pulmonary medical records because even

though Plaintiff was "consistently advised to cease smoking, . . . he continued to

smoke until early 2015." Tr. 35 (citing Tr. 792). When assessing the severity of a respiratory condition, the ALJ may consider Plaintiff's smoking and its impact on his respiratory conditions. *See* Listing of Impairments—Respiratory System, 58 FR 52346-01, 1993 WL 393881 (eff. 1993); SSR 13-2p (eff. March 2013). But on this record, it is unclear how Plaintiff's smoking impacted his respiratory conditions, as while Plaintiff stopped smoking in January 2015, he continued to suffer respiratory conditions throughout 2015. Tr. 854-56, 861, 863 (treating Plaintiff for COPD exacerbation in May and August 2015). Moreover, before a medical opinion may be discounted because the doctor failed to appreciate that the impairment could have been remedied if the claimant followed a prescribed course of treatment, i.e., stopped smoking, the ALJ must consider the claimant's offered good cause for failing to follow the recommended treatment. SSR 82-59 (eff. until Oct. 29, 2018).

The ALJ's error at step three is consequential. However, because this matter is being remanded for benefits on other grounds, a new step-three analysis is unnecessary on remand.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of Guillermo Rubio, M.D.; Russ Havlicek, M.D.; Anthony Francis, M.D.; Hayden Hamilton, M.D.; and Keith Hanson, M.D. ECF No. 15 at 3-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Manipulative Limitations

Plaintiff argues the ALJ erred by discounting the medical opinions that limited Plaintiff to occasional manipulative tasks. ECF No. 15 at 3-11, 15-19.

### i. Dr. Rubio

In June 2013, state agency medical consultant Dr. Rubio reviewed the medical evidence of record and opined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but could never climb ladders, ropes, and scaffolds. Tr. 136-39. Dr. Rubio also opined that Plaintiff's manipulative abilities, such as reaching, handling, fingering, and feeling, were limited to occasional. Tr. 138. The ALJ assigned significant weight to most of Dr. Rubio's opinion, but discounted his opinion as to Plaintiff's manipulative limitations. Tr. 44.

Because Dr. Rubio's opinion regarding manipulative limitations was contradicted by Dr. Francis' opinion, Tr. 97-98, the ALJ was required to provide specific and legitimate reasons to reject Dr. Rubio's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Rubio's occasional-manipulative limitation because it was inconsistent with Plaintiff's treatment history. Tr. 44. The consistency of a medical opinion with the record is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). But "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). In support of this conclusion, the ALJ found that Plaintiff did not receive any significant treatment for such problems and did not consistently complain of problems with respect to his hands, arms, and shoulders. Tr. 44. Plaintiff concedes that the nature and frequency of treatment is a factor for the ALJ to consider, but Plaintiff argues that a claimant need not repeatedly see a doctor for a chronic, well-documented condition and that

conservative treatment does not mean a condition is not limiting.  ECF No. 15 at 8.

The record reflects that Plaintiff's hand, arm, and shoulder issues are longstanding

as Plaintiff had carpal tunnel release on his right hand in either 1993 or 2001 and

acromioclavicular (AC) reconstruction on his left shoulder in 1990.  Tr. 418, 786.

Even after these surgeries, Plaintiff continued to be impacted by these conditions.

For instance, x-rays of the left shoulder in 2010 showed that Plaintiff had mild

degenerative changes of the AC joint in the right shoulder, degenerative changes

with deformity of the distal clavicle, and widened acromioclavicular joint.  Tr. 455.

In 2012, x-rays of the shoulders revealed mild degenerative change of the

acromioclavicular joint in the right shoulder and posttraumatic changes of the

distal clavicle and coracoclavicular ligament calcification in the left shoulder.  Tr.

632-35.  In addition, in August 2010, Dr. Gary Gaffield observed Plaintiff with

limited wrist movement, diminished bilateral grip, and left shoulder weakness; Dr.

Gaffield diagnosed probable carpal tunnel syndrome and tendonitis of the left

wrist.  Tr. 447-50; *see also* Tr. 382-99 (2009: Dr. Patrick Lynch: diagnosing

Plaintiff with carpal tunnel and lumbar disc disease, which moderately to severely

impacted Plaintiff's handling); Tr. 457-64 (Aug. 27, 2010: Norman Staley, M.D.:

non-examining physical residual functional capacity assessment: limited

manipulative abilities to occasional finger handling bilaterally).  In July 2012, Dr.

Keith Hanson diagnosed Plaintiff with bilateral carpal tunnel syndrome and

observed that Plaintiff had very limited range of motion of his shoulder. Tr. 631.

Likewise, in February 2013, Dr. Hayden Hamilton observed Plaintiff with

weakened bilateral grip strength and with some difficulty picking up small objects

and folding papers with hands bilaterally and impaired range of motion of the

bilateral shoulders with possible adhesive capsulitis. Tr. 619-23. Dr. Hamilton

observed that Plaintiff had limited range of motion of both shoulders and

diagnosed possible adhesive capsulitis. Tr. 621-22. Dr. Hamilton opined that

Plaintiff was limited to occasional manipulative abilities. Tr. 619-23. In March

2015, treating physician Dr. Russ Havlicek examined Plaintiff and found

Plaintiff's left shoulder had limited range of motion, Plaintiff had moderate pain

and discomfort to palpation about the shoulder, and he had diminished sensation to

light touch in the fingers of his left hand. Tr. 793. Dr. Havlicek diagnosed

Plaintiff with chronic back pain and "left shoulder pain, secondary to history of

biceps tear and acromioclavicular (AC) reconstruction in combination with carpal

tunnel which reduces the ability of function of the left hand." Tr. 793. On this

record, it is unclear if, or what, treatment was medically available and

recommended to relieve Plaintiff's long-standing hand, arm, and shoulder issues.

Given that the Court rejects all other reasons provided by the ALJ for rejecting Dr.

Rubio's assessed limitations, this reason, even if supported by substantial evidence,

cannot stand alone in supporting rejection of Dr. Rubio's assessed limitations.

The ALJ's finding that Plaintiff did not report problems with his hands, arms, and shoulders is not supported by substantial evidence. *See, e.g.*, Tr. 400 (Apr. 2010: Dr. Lynch: complaining of left wrist pain); Tr. 409-11 (June 2010: Tamara Russell, Psy.D.: reporting that right fingers tingle, grip is weak, tendinitis in left wrist, and bursitis in shoulder); Tr. 447-52 (Aug. 2010: Dr. Gaffield: reporting problems closing his fists, numbness in his fingertips, and shoulder pain and weakness); Tr. 619-23 (Feb. 2013: Dr. Hamilton: reporting decreased sensation in bilateral upper extremities; difficulty holding onto objects; tingling in bilateral hands; discomfort with writing, driving, and work using upper extremities; and intermittent swelling in bilateral hands); Tr. 691 (June 2014: reporting tingling of both hands and numbness of right forearm); Tr. 729 (Sept. 2014: reporting carpal tunnel in both hands and tendonitis in right arm); Tr. 752-53 (Dec. 2014: carpal tunnel syndrome, shoulder problems); Tr. 793 (March 2015: reporting chronic left shoulder pain, continued numbness and tingling in left hand, and difficulty picking things up); Tr. 491, 505, 551, 559 (indicating that Plaintiff lacked medical insurance in 2011 and 2012). Thus, this reason cannot serve as a basis to discount Dr. Rubio's opinion as to manipulative limitations.

Second, the ALJ found Dr. Rubio's occasional-manipulative-limitation opinion inconsistent with the opinion of treating physician Dr. Havlicek, who opined, amongst other things, that Plaintiff's chronic lower back pain markedly

limited his ability to handle and his chronic left shoulder and arm pain moderately

limited his ability to handle. Tr. 44, 722. An ALJ is not obligated to credit

medical opinions that are contradicted by the opinions of other examining or

treating physicians. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

An ALJ may choose to give more weight to an opinion that is more consistent with

the evidence in the record. 20 C.F.R. § 416.927(c)(4); *Nguyen v. Chater*, 100 F.3d

1462, 1464 (9th Cir. 1996). Relevant factors when evaluating a medical opinion

include the amount of relevant evidence that supports the opinion, the quality of

the explanation provided in the opinion, and the consistency of the medical opinion

with the record. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631; 20 C.F.R. §

416.927(c)(6) (assessing the extent to which a medical source is "familiar with the

other information in [the claimant's] case record"). Here, the ALJ failed to

recognize that Dr. Havlicek opined that Plaintiff had significant manipulative

limitations—an opinion that is consistent with Dr. Rubio's opinion. For instance,

Dr. Havlicek opined that Plaintiff's ability to handle was both significantly

interfered with (moderate) and very significantly interfered with (marked). Tr.

722; *see also* Tr. 793. Therefore, both Dr. Havlicek (Plaintiff's treating physician)

and Dr. Rubio (a nonexamining physician) found significant manipulative

impairments. The ALJ's finding that Dr. Havlicek's opinion "did not find

significant manipulative limitations" is not supported by the record. Tr. 44. That

Dr. Havlicek checked the "light work" exertional-limitations box is not inconsistent with the occasional-handling restriction as the light-work exertional-limitations box indicated instead that Plaintiff was able "to lift 20 pounds maximum and frequently lift or carry up to 10 pounds, able to work or stand six out of eight hours per day, and able to sit and use pushing or pulling arm or leg movements most of the day." Tr. 722. As the Commissioner concedes, except for the above-noted marked and moderate limitations on the ability to handle, this form did not contain another manual functioning inquiry. ECF No. 22 at 11. Because the ALJ failed to recognize that Dr. Havlicek opined that Plaintiff's handling abilities were significantly limited, the ALJ erred by discounting Dr. Rubio's occasional manipulative limitation on the basis that it was purportedly inconsistent with Dr. Havlicek's opinion.

The Commissioner submits this error is harmless because Dr. Lynch, Plaintiff's other treating physician, stated in 2011 that Plaintiff did not have gross or fine motor restrictions and therefore there was a treating physician opinion on which to discount Dr. Rubio's opinion. ECF No. 22 at 11. This argument is unpersuasive for several reasons. First, the ALJ did not expressly rely on Dr. Lynch's opinion to discredit Dr. Rubio's opinion. *See Bayliss*, 427 F.3d at 1216 (The ALJ must specifically articulate a legitimate reason, supported by substantial evidence, for discrediting a physician's opinion.). Second, in the portion of the

ALJ decision discussing Dr. Lynch, the ALJ erroneously attributed the January

2011 opinion to Dr. Lynch and thereby erroneously assigned significant weight to

this 2011 opinion on the basis that it was based on Dr. Lynch's treating

relationship with Plaintiff.  Tr. 46 (citing Tr. 719-20).  But this January 2011

opinion was an opinion of Richard Lynn, M.D.—not Dr. Lynch.  There is no

record that Plaintiff had a treating relationship with Dr. Lynn.  Third, as to Dr.

Lynch, Dr. Lynch did opine that Plaintiff had impairments impacting his ability to

handle.  For instance, in 2009, Dr. Lynch opined that Plaintiff had lumbar disc

disease and carpal tunnel that moderately restricted his handling, Tr. 384, and in

2010, Dr. Lynch opined that Plaintiff's gross or fine motor skills were limited by

chronic back and wrist pain, Tr. 718.  These opinions were based on Dr. Lynch's

treating relationship with Plaintiff from January 2009 to April 2010.  Tr. 389-401.

Thus, Dr. Lynch's opinion was consistent with Dr. Rubio's occasional-

manipulative-abilities opinion.  And while Dr. Lynch's manipulative opinions pre-

dated Plaintiff's disability onset date, it was consistent with the occasional-

manipulative opinion of Dr. Staley, who was the nonexamining physician

reviewing Plaintiff's prior disability application.  Tr. 108, 460.  Thus, the ALJ's

erroneous finding that Dr. Rubio's occasional manipulative limitation was

inconsistent with Dr. Havlicek's opinion is not remedied by Dr. Lynch's opinions.

Third, the ALJ discounted Dr. Rubio's manipulative-limitation opinion because it was inconsistent with the opinion of medical expert Dr. Francis, who testified at the administrative hearing. Tr. 44. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4); *Nguyen*, 100 F.3d at 1464. Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter*, 504 F.3d at 1042.

Here, Dr. Francis testified,

> I didn't really see anything that would support any kind of manipulative limitations really. Did he have carpal tunnel? Maybe he did at one time. Normally, if your patient has carpal tunnel (inaudible) consultative Social Security is going to put him at a frequent use of upper extremities as far as manipulative, you know, that would be hand and wrist motion, fingering, typing, data entry, that sort of thing.

Tr. 97-98. Dr. Francis was then asked to discuss the impact of Dr. Hayden Hamilton's 2013 consultative examination and opinion that Plaintiff was limited to occasional-manipulative abilities, an opinion which was based on Dr. Hamilton's diagnosis that Plaintiff had "impaired sensation in the bilateral extremities, with a concern for peripheral neuropathy versus plexopathy versus radiculopathy" and adhesive capsulitis of the bilateral shoulders. Tr. 98, 619-23. In response, Dr. Francis testified that adhesive capsulitis in the shoulder was not expected to affect

one's hand and wrist motion unless it was really bad.  Tr. 98.  But Dr. Francis did not offer an opinion as to the severity of Plaintiff's adhesive capsulitis.  Dr. Francis also did not discuss nor opine whether Plaintiff's diagnosed carpal tunnel or peripheral neuropathy versus plexopathy versus radiculopathy supported Dr. Hamilton's occasional manipulative limitation.  Tr. 98.  Nonetheless based on Dr. Francis' testimony, the ALJ found that Dr. Francis "stated that [Plaintiff] did not have significant manipulative limitations."  Tr.  45.

Here, the ALJ assigned only some weight to Dr. Francis' opinion that Plaintiff did not have any manipulative limitations and crafted an RFC that permitted frequent handling.  Tr. 45.  The ALJ then used Dr. Francis' opinion as a basis to discount Dr. Rubio's occasional-manipulative-limitation opinion.  Tr. 44.

A review of the record reveals that Dr. Francis' opinion that Plaintiff did not have any significant manipulative limitations is not supported by substantial evidence.  As discussed above, during the consultative examination, Dr. Hamilton observed Plaintiff had limited range of motion in both shoulders and had difficulty picking up small objects and folding papers with his hands bilaterally, and noted grip strength as 4/5 bilaterally and that pinprick sensation was decreased in the bilateral upper extremities, fingers to forearms, in no anatomic distribution.  Tr. 621-22.  Based on his observations, Dr. Hamilton diagnosed Plaintiff with impaired sensation in the bilateral extremities, with a concern for peripheral

neuropathy versus plexopathy versus radiculopathy; impaired strength in the bilateral upper extremities, possibly related to neuropathy; and impaired range of motion of the bilateral shoulders, with possible adhesive capsulitis. Tr. 622. Similarly, Plaintiff's treating physician Dr. Havlicek observed that Plaintiff had diminished sensation to light touch in the fingers of the left hand. Tr. 793. Moreover, as recognized by both Dr. Hamilton and Dr. Havlicek, Plaintiff's diagnosed conditions that impacted his manipulative abilities were longstanding. For instance, in August 2010, Dr. Gary Gaffield conducted a physical examination of Plaintiff that revealed poor grip:

> Upper extremities revealed some weakness of grip, although his fingernails and hands were dirty as if he were doing mechanical work. Fingers are stained with nicotine. Tinel sign was negative bilaterally. Finkelstein was negative on the left, but positive on the right. Motion of the right wrist was restricted with diminished grip bilaterally.

Tr. 449, 451. As to Plaintiff's thumbs, Dr. Gaffield noted "metacarpophalangeal flexion 50 degrees, interphalangeal flexion 60 degrees bilaterally. This makes it difficult for him to close his fist." Tr. 451. Dr. Gaffield diagnosed Plaintiff with probable carpal tunnel syndrome causing bilateral grip weakness and tendonitis in the left wrist. Tr. 451. Dr. Gaffield opined that "[m]anipulative activities can be performed only occasionally due to the weakness of his hands and probable recurrent carpal tunnel and tendonitis of the left wrist." Tr. 452. Similarly, on August 27, 2010, reviewing physician Dr. Norman Staley—who assessed

ORDER - 26

Plaintiff's physical residual functional capacity—opined that Plaintiff's manipulative abilities were limited and that Plaintiff was restricted to occasional bilateral finger handling. Tr. 460, 464. While Dr. Gaffield's and Dr. Staley's opinions were before the alleged disability onset of September 19, 2012, they are relevant for the limited purpose of showing that the longitudinal record contained information about Plaintiff's diagnosed hand, wrist, and shoulder conditions, which impacted his manipulative abilities, and that they were consistent with the more recent opinions limiting Plaintiff to occasional manipulative tasks. *See Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008) (discussing that information pre-dating the alleged disability onset date have limited relevance). Accordingly, a review of the complete record reflects that Dr. Francis' opinion that Plaintiff did not have any manipulative limitations is not supported by substantial evidence. *See Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). Therefore, the ALJ erred by discounting Dr. Rubio's occasional manipulative limitation as inconsistent with Dr. Francis' unsupported opinion. *Cf. Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

In summary, the ALJ failed to articulate specific and legitimate reasons for discounting Dr. Rubio's manipulative-limitation opinion.

### ii. Dr. Hamilton

Dr. Hamilton conducted a consultative examination on February 23, 2013, and diagnosed Plaintiff with impaired sensation in the bilateral extremities, with a concern for peripheral neuropathy versus plexopathy versus radiculopathy, lumber degenerative disc disease and impaired range of motion of the lumbar spine, impaired range of motion of the bilateral shoulders, with possible adhesive capsulitis, impaired range of motion of the cervical spine, possibly soft tissue related versus degenerative disc disease, and impaired strength in the bilateral upper extremities, possibly related to neuropathy. Tr. 619-23. Dr. Hamilton opined that Plaintiff had no limits standing, walking, or sitting; was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; was not able to climb ladders and scaffolding; and was able to perform manipulative tasks occasionally. Tr. 623.

The ALJ assigned Dr. Hamilton's opinion great weight, except as to his opinion that Plaintiff could only occasionally perform manipulative activities. Tr. 41. Because Dr. Hamilton's opinion regarding Plaintiff's manipulative limitations was contradicted by Dr. Francis' opinion, the ALJ was required to provide specific and legitimate reasons to reject Dr. Hamilton's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Hamilton's manipulative-limitations opinion because it was inconsistent with the evidence of record. Tr. 41. The consistency of a medical opinion with the record is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *Rollins*, 261 F.3d at 856; *Parra*, 481 F.3d at 750-51; *Garrison*, 759 F.3d at 1015. But "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels*, 874 F.3d at 667. Here, the ALJ found Dr. Hamilton's opinion was inconsistent with Plaintiff's visits to his primary care providers between 2013 and 2015, where he did not consistently complain of problems with his extremities and exhibited few abnormal objective findings longitudinally and Plaintiff's lack of treatment for his upper-extremities problems. Tr. 41. The ALJ's finding that Plaintiff did not consistently complain of problems with his upper extremities and exhibited few abnormal objective findings longitudinally is not supported by substantial evidence, for the reasons discussed above. Dr. Hamilton's opinion is consistent with the observations, diagnoses, and opinions of each of the physicians examining or treating Plaintiff for his hand, arm, and shoulder issues. Tr. 447-50, 382-99, 619-23. The ALJ erred by discounting Dr. Hamilton's opinion as not supported by the record.

The ALJ also discounted Dr. Hamilton's manipulative-limitations opinion on the grounds that it was inconsistent with Dr. Francis' opinion that Plaintiff had no significant manipulative limitations. An ALJ may discredit physicians' opinions that are unsupported by the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Here, as discussed above, Dr. Francis' opinion that Plaintiff had no significant manipulative limitations is not supported by the record.

The ALJ failed to articulate specific and legitimate reasons for discounting Dr. Hamilton's manipulative limitations.

### 2. Respiratory Limitations

Plaintiff faults the ALJ for rejecting the opinions of Dr. Rubio and Dr. Francis regarding Plaintiff's respiratory limitations. ECF No. 15 at 10-19.

### i. Dr. Rubio

Dr. Rubio opined that Plaintiff should "[a]void even moderate exposure" to hazards, fumes, odors, dusts, gases, and poor ventilation. Tr. 139. The ALJ assigned significant weight to this portion of Dr. Rubio's opinion. Tr. 44. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Here, rather than incorporate Dr. Rubio's opinion that Plaintiff should avoid even moderate exposure to respiratory irritants, the RFC permitted "no more than moderate exposure to respiratory irritants and hazards." Tr. 36. The ALJ failed to explain why the RFC failed to incorporate Dr. Rubio's accepted respiratory irritants limitation. The Commissioner submits that this error is harmless because only one of the jobs identified by the ALJ at step five—cleaner/housekeeper—would be eliminated if Plaintiff is limited to no exposure to pulmonary irritants. ECF No. 22 at 9. As is discussed below, the ALJ's error in this regard is immaterial because the Court is ordering remand for an award of benefits based on the errors associated with the manipulative limitations. Even if Plaintiff can work at a moderate exposure to irritants, the vocational expert testified that Plaintiff's functional limitations preclude him from competitive work if his manipulative abilities are restricted to occasional. Tr. 101-04.

        ii.    Dr. Francis

     Dr. Francis reviewed the medical record as of the date of the administrative hearing and testified as the medical expert at the administrative hearing. Tr. 92-100. As discussed above, Dr. Francis suspected that Plaintiff "probably has both" asthma and COPD but that it was speculative what impact Plaintiff's smoking had on these pulmonary conditions. Tr. 99. Dr. Francis testified that Plaintiff either

met a pulmonary Listing or "maybe could function at a light RFC with no exposure to dusts, odors, fumes, and noxious lung irritants." Tr. 93-96.

The ALJ found that Dr. Francis "could not assess the severity of [Plaintiff's] respiratory problems" and thus assigned limited weight to Dr. Francis' opinion that Plaintiff probably suffered from asthma and/or COPD and should have no exposure to respiratory irritants. Tr. 45. Because Dr. Rubio opined that Plaintiff could work with less than moderate exposure to respiratory irritants, Tr. 139, rather than no exposure to respiratory irritants, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Francis' opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ assigned limited weight because Dr. Francis' opinion that Plaintiff probably suffered from asthma and/or COPD was not concrete. Tr. 45. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228. Plaintiff contends that the record is clear that Dr. Francis opined that Plaintiff's respiratory conditions were limiting and that the only ambiguity was whether Plaintiff's respiratory conditions were so severe that they equaled a listing at step three or simply required an RFC that limits Plaintiff to "no exposure to dusts, odors, fumes, [and] noxious lung irritants." ECF No. 15 at 12-13 (citing Tr. 95-96). The Court agrees. Even though Dr. Francis was uncertain as to whether Plaintiff's respiratory limitations were due to asthma,

COPD, or both, Dr. Francis testified that Plaintiff's respiratory conditions restricted exposure to dusts, odors, fumes, and noxious lung irritants. Tr. 96, 99. There is substantial evidence in the record to support Dr. Francis' respiratory irritant restriction. *See, e.g.*, Tr. 138 (Dr. Rubio: not even moderate exposure); Tr. 623 (Dr. Hamilton: avoid exposure to chemicals, dust, fumes, and gases); Tr. 624-27 (Dr. Hanson: no work in part due to asthma). Therefore, the ALJ erred by discounting Dr. Francis's respiratory irritant restriction on the grounds that it was vague.

Second, the ALJ assigned limited weight to Dr. Francis' opinion that Plaintiff probably suffered from asthma and/or COPD because it did not properly account for Plaintiff's ongoing smoking during the periods of poor pulmonary function test scores. Tr. 45. The ALJ may consider Plaintiff's smoking and its impact on his respiratory conditions. *See, e.g.*, Listing of Impairments—Respiratory System, 58 FR 52346-01, 1993 WL 393881 (eff. 1993); SSR 13-2p (eff. March 2013). However, before discounting a medical opinion because the doctor failed to appreciate that the impairment could have been remedied if the claimant followed a prescribed course of treatment, i.e., stopped smoking, the ALJ must consider whether the claimant had a good cause for failing to follow the recommended treatment. SSR 82-59 (eff. until Oct. 29, 2018). On this record, it is unclear how Plaintiff's smoking impacted his respiratory conditions, as even

though Plaintiff stopped smoking in January 2015 he continued to suffer from respiratory conditions. Tr. 854-56, 861, 863 (treating Plaintiff for COPD exacerbation in May and August 2015). Therefore, it was erroneous for the ALJ to discount Dr. Francis' opinion on the grounds that it did not properly account for Plaintiff's ongoing smoking during the periods of poor pulmonary function test scores. However, as is discussed below, the ALJ's error in this regard is immaterial because the Court is ordering remand for an award of benefits based on the errors associated with the manipulative limitations. Even if Plaintiff can work at a moderate exposure to irritants, the vocational expert testified that Plaintiff's functional limitations preclude him from competitive work if his manipulative abilities are restricted to occasional. Tr. 101-04.

### 3. Exertional Limitations

Plaintiff argues the ALJ erred by rejecting the opinions of Dr. Hanson, who treated Plaintiff in 2012 and 2013, Tr. 625-39, and diagnosed Plaintiff with severe asthma, COPD, lumbar spine osteoarthritis with severe degenerative disk disease, and bilateral carpal tunnel syndrome. Tr. 625, 629, 631. In July 2012, Dr. Hanson opined that Plaintiff could work zero hours because of his medical conditions. Tr. 629-30. In March 2013, Dr. Hanson opined that Plaintiff was "not capable of performing work, particularly manual type work" because of his degenerative disease of his lumbar spine and his asthma. Tr. 624-25. The ALJ assigned little

weight to Dr. Hanson's no-work opinions.  Tr. 45.  Because the ALJ erred by discounting the occasional-manipulation limitation—an opinion that was reached by the treating, examining, and nonexamining physicians, except Dr. Francis, Tr. 138, 619-23, 722—and the vocational expert testified that given Plaintiff's other functional limitations Plaintiff would be precluded from competitive work if limited to occasional manipulative tasks, the Court need not analyze whether the ALJ erred by rejecting Dr. Hanson's no-work opinions.

**C. RFC**

Plaintiff contends that the above errors were harmful because the ALJ failed to include Plaintiff's occasional manipulative limitation and his respiratory conditions into the RFC and therefore the hypotheticals presented to the vocational expert did not accurately reflect all of Plaintiff's limitations.  ECF No. 15 at 10, 19.

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC.  20 C.F.R. § 416.920(a)(4)(iv).  "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006.  "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions if they are supported by substantial evidence, even when there is conflicting medical evidence. *Id.*

Here, the RFC permitted Plaintiff to work jobs requiring frequent handling and fingering bilaterally and moderate exposure to respiratory irritants and hazards. Tr. 36. The ALJ crafted this RFC by 1) erroneously discounting Dr. Rubio's and Dr. Hamilton's opined occasional manipulative limitations; 2) failing to recognize that Dr. Havlicek opined that Plaintiff's grasping abilities were significantly to very significantly limited; 3) erroneously crediting Dr. Francis' unsupported no-manipulative limitations opinion; and 4) failing to credit Dr. Francis' opinion that Plaintiff should not be exposed to respiratory irritants. Because of these errors, the ALJ crafted an RFC that failed to fully incorporate all of Plaintiff's limitations, namely his limitations to occasional manipulative tasks and to avoid even moderate

exposure to respiratory irritants.  Because the vocational expert testified that given the other limitations, a limitation to occasional handling and fingering, would preclude competitive work, Tr. 101-04, the ALJ's erroneous findings were consequential.  *See Tommasetti*, 533 F.3d at 1038.

**D. Remedy**

Plaintiff urges the Court to remand for an immediate award of benefits.  ECF No. 15 at 19-20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020.  Under the credit-as-true rule, where 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on remand, the court will remand for an award of benefits. *Revels*, 874 F.3d at 668. Even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

### 1. Completeness of the Record

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen*, 100 F.3d at 1466–67 (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (same); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc) (same).

Here, the record is fully developed as to the deciding limitations. As was discussed above, each of the treating, examining, and nonexamining physicians, other than Dr. Francis, opined that Plaintiff was limited to occasional manipulative limitations. The occasional manipulative limitation is supported by the objective

medical evidence. Likewise, the record was fully developed regarding Plaintiff's exertional, social, and mental limitations—limitations that were contained in the RFC. Based on Plaintiff's exertional, social, mental, and occasional-manipulative-tasks limitation, the vocational expert testified Plaintiff that was precluded from competitive work, Tr. 101-04; therefore, it is immaterial whether Plaintiff's respiratory restriction should be greater than avoid-even-moderate exposure to irritants. Thus, the record need not be developed regarding Plaintiff's respiratory limitations. The first prong of the credit-as-true rule is met.

### 2. ALJ Error

As discussed above, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting the occasional manipulative limitation. Because the vocational expert testified that Plaintiff was precluded from competitive work given his other functional limitations, along with an occasional-manipulative-tasks restriction and not even moderate exposure to respiratory irritants, the ALJ erred. Therefore, the second prong of the credit-as-true rule is met.

### 3. Crediting as True Demonstrates Disability

The third prong of the credit-as-true rule is satisfied because if the manipulative-limitation opinions of Dr. Rubio, Dr. Hamilton, and Dr. Havlicek were credited as true, the ALJ would be required to find Plaintiff disabled. Each of

ORDER - 39

these physicians opined that Plaintiff's manipulative abilities were significantly restricted. The vocational expert testified that an individual with Plaintiff's exertional, social, and mental limitations combined with restrictions to occasional manipulative tasks and not even moderate exposure to irritants was precluded from competitive employment. Tr. 101-04. Had the ALJ credited the opinions of Dr. Rubio, Dr. Hamilton, and Dr. Havlicek, the ALJ would be compelled to find Plaintiff disabled.

### 4. Serious Doubt

Finally, the record does not leave serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1021. Plaintiff's impairments and their serious effects on his functionality over the course of years are documented in the medical evidence of record. Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100 (internal citations omitted). In *Vasquez*, the Ninth Circuit exercised its discretion and applied the "credit as true" doctrine because of the claimant's advanced age and "severe delay" of seven years in her application. *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009). Here, the delay of over six years from the date of the

application make it appropriate for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

The Court therefore reverses and remands to the ALJ for the calculation and award of benefits.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 18, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE